United States District Court
Southern District of Texas
FILED

JAN 6 2004

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

RODRIGUEZ-ZAPATA, ANTONIO )
)
)
v. ) C.A. No. B-04-004
)
PHILIP D. TUTAK, DHS INTERIM DISTRICT ) DHS A No. 36 743 567
DIRECTOR FOR INTERIOR ENFORCEMENT, )
and )
JOHN ASHCROFT, ATTORNEY )
GENERAL OF THE UNITED STATES. )

## PETITION FOR WRIT OF HABEAS CORPUS

Antonio Rodriguez-Zapata, Petitioner, files the instant Petition for Writ of Habeas Corpus, and shows as follows:

### I. JURISDICTION AND VENUE

1. Jurisdiction herein arises under 28 U.S.C. §2241 (habeas corpus), and §1331 (federal question).

2. The Petitioner Mr. Rodriguez-Zapata is under an administratively final order of removal (See Exhibit A) which order places significant restrictions on his liberty not shared by the populace at large, including the fact that he cannot travel outside of the United States. *Jones v. Cunningham* 371 U.S. 236, 240 (1963). His immigration proceedings were held and the removal order was entered at the Harlingen, Cameron County, Texas, Immigration Court.

3. The Respondent Tutak maintains his offices in Harlingen, Cameron County, Texas, within the jurisdiction of this court.

### II. THE PARTIES

4. Petitioner Mr. Rodriguez-Zapata has been a legal permanent resident for twenty-three (23) years. He is a forty-four (44) year old native and citizen of Mexico who became a legal permanent resident at the age of nineteen (19). He has a single state court judgment of probation in October of 1995 for Indecency with a Child occurring in Cameron County, Texas. Besides this single offense, the Petitioner Mr. Rodriguez-Zapata has a strong record as a productive member of American society.

5. Respondent Philip Tutak is an Interim District Director of the Harlingen, Cameron County, Texas, office of the Department of Homeland Security ("DHS"). He is sued in his official capacity only.

6. Respondent John Ashcroft is the Attorney General of the United States. He is also sued in his official capacity only.

### III. THE FACTS

7. Petitioner Mr. Rodriguez-Zapata was admitted to the United States as a lawful permanent resident ("LPR") in 1981. He has been married to the same LPR spouse since 1984. They have two(2) U.S. citizen children and 1 legal permanent resident son. He has been a bricklayer for many years with a history of filing and paying his U.S. income taxes on an annual basis. He and his wife own their home. His father is a naturalized citizen, and his moter and four siblings are legal permanent residents living throughout Texas. He has never previously been in immigration proceedings.

8.  On or about October of 1995, he was given probation for indecency with a child following a jury trial. Mr. Rodriguez-Zapata has no other criminal conviction, although he does have a 1989 arrest in Dallas, Texas.

9.  Immigration proceedings against Petitioner began on June 27, 2001 charging removability based on a conviction for an aggravated felony which Petitioner admitted. His application for relief under Sec. 212(c) was filed and the fee paid on June 12, 2002. On September 13 2002, the Immigration Judge pretermitted the case, determining that the Petitioner was ineligible for relief from removal in the form of the Sec. 212(c) waiver due to his conviction by a jury trial instead of by guilty plea.

10. The Petitioner appealed the decision to the Board of Immigration Appeals (BIA) and on December 10, 2003, the Board affirmed the decision of the Immigration Judge without opinion. A copy of the BIA decision is attached as Exhibit B hereto. Petitioner alleges that except for the administrative proceedings detailed herein, he has sought no court review of the validity of any immigration court order or BIA decision prior to the filing of this instant suit.

11. The Petitioner exhausted his administrative remedies without having an opportunity to present his claim for relief under Sec. 212(c) of removal for legal permanent residents. Mr. Rodriguez Zapata has argued that because he has lived in the United States for many years, because of his legal resident spouse and USC children, many legal family members, and because of his work record in the U.S, his case should be given consideration on the merits of his application for relief.

12. Because Mr. Rodriguez-Zapata has such a lengthy residence in the United States, because of the good work record, the evidence of rehabilitation and of strong equities, he alleges that it is likely that he would have qualified for Sec. 212(c) relief had his case been heard on the merits.

allowing relief from deportation as found at 212(c) of the Act in effect at that time. The wording of the relevant portion of that statute was as follows:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provision of subsection (a)(other than paragraphs (3) and (9). Nothing contained in the subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 211(b). The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years. (A copy of this statute is attached hereto as Exhibit C.)

In April of 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (herein AEDPA) and in September of that year passed the Illegal Immigration Reform and Immigrant Responsibility Act (herein IIRIRA), which eliminated 212(c) relief . Sexual Abuse of a minor was first included in the listing of aggravated felonies in the "Amended Definition of Aggravated Felony" in Sec. 321 of IIRIRA, effective September 30, 1996. Sec. 321(a)(1) of IIRIRA. A singular court decision impacts this proceeding: *Immigration and Naturalization Service. vs. St. Cyr*, 533 U.S. 289 (2001).

14. Upon information and belief, Petitioner alleges that a significant number of LPRs who were otherwise similarly situated, but who plead guilty to their criminal charges and/or who were already in proceedings prior to April 1, 1997, have been granted relief under Sec. 212(c). Petitioner further alleges that under the original interpretation and in immigration law and practice for the 212 (c) waiver there was no distinction in the availability of this relief between a conviction based on a plea and one occurring after jury trial.

## IV. THE CAUSE OF ACTION

### HABEAS CORPUS

Petitioner reasserts and incorporates by reference paragraphs 1- 14   herein.

Petitioner Mr. Rodriguez-Zapata asserts that the removal order violates the laws and Constitution of the United States, which claims are cognizable in habeas corpus under 28 U.S.C. §2241.

*1. Impermissible Retroactive Application of Law*

Petitioner alleges that the 2003 Board decision impermissibly violates his due process rights and federal law as enunciated in *INS v. St. Cyr*, 533 U.S. 289, 121 S. Ct. 2271, 150L. Ed 2d 347 (2001).  Mr. Rodriguez-Zapata urges that the application of IIRIRA to his case retroactively has occurred in the immigration proceeding.  The definition of "sexual abuse of a minor" as found in IIRIRA has been applied retroactively to his crime as had the elimination of 212(c) relief.  Even though a good portion of the *St. Cyr* case addresses itself to the impermissible retroactive application of the law, this decision, if allowed to stand would do that retroactively by implication legislating a novel requirement.

*2. Equal Protection*

### i. Differing Results Due to Whether Plea or Jury Trial

Petitioner  also claims, following the reasoning of *St. Cyr, op.cit.* that the administrative interpretation of the law as applied to this case violates equal protection because it varies depending on whether he sought a jury trial or entered a guilty plea. By legislating this new requirement of a guilty plea as a prerequisite to 212(c) relief, the administrative agency has treated the Petitioner who asserted his innocence less favorably than one who waived their constitutional right to a trial.

### ii. Different Results Due to Timing of Proceedings

Mr. Rodriguez-Zapata would show that the treatment of his case has depended on the timing of law changes and court rulings. This is exemplified by the fact that, had proceedings been immediately instigated following his court conviction he would have been eleigible for relief on the merits, whereas in the post-*St. Cyr, op.cit.* environment with its narrow and flawed interpretation of that

decision, he is not eligibile for relief. It violates equal protection for the result of whether Mr. Rodriguez-Zapata is given an immigration court merits hearing and allowed the possibility of remaining in the United States, or instead is denied a merits hearing and barred from continued lawful permanent resident status, separated from his family and permanently barred from returning to the United States, based solely on the timing of immigration proceedings.

### 3. Substantive Due Process

Petitioner Mr. Rodriguez-Zapata further and/or in the alternative asserts that a deportation of him from the United States would violate a fundamental liberty interest which he has to live and work in the United States and a right to unite with his family within the United States. *Landon vs. Plasencia*, 459 U.S. 21, 34 (1982); *Bridges vs. Wixqr826*, U.S. 326 U.S. 135, 154(1945). In *Plasencia*, the Court wrote:

> Plasencia's interest here is, without question, a weighty one. She stands to lose the right "to stay and live and work in this land of freedom...Further she may lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual. *Op. cit.* P.34.

As a lawful permanent resident, Mr. Rodriguez-Zapata enjoys the same Due Process rights, including substantive Due Process rights.

A violation of the constitutional protection to substantive due process exists when a provision, or a combination of provision, such as exists in this case operate together to create an unjustifiable conclusive presumption which is so broad that it does not meet a compelling state interest. *United States v. Salerno*, 481 U.S. 739, 747 (1987). In the instant case, the 1996 law changes brought by IIRIRA, which expanded 8 U.S.C. Sec. 1101(a)(43) regarding "aggravated felony" and 8 U.S.C. 1229 B(a) which denied discretionary relief to anyone with an aggravated felony with the statutory and court established overly broad and variable definitions of the term, all create an unconstitutional presumption that all lawful permanent residents who have such a court adjudication should be barred from the United States, even when the state criminal system and in this case, the community reflected in the jury system, has determined that it is appropriate as a first time offender to receive probation.

### 4. Procedural Due Process

Petitioner Mr. Rodriguez-Zapata, additionally and/or in the alternative, urges that the Board's decision deprives him of procedural due process as required by the U.S. Constitution. *Reno v. Flores* 507 U.S. 292, 306 (1993). The Petitioner asserts an entitlement to "fair notice" of a law change. In Mr. Rodriguez-Zapata's case, at the time of his criminal conduct and at the time of his conviction, his offense was not considered an aggravated felony under immigration law and relief was available. But by the time immigration proceedings were initiated, no recourse but removal was available. This result could not have been contemplated at the time of Mr. Rodriguez-Zapata's decision to exercise his constitutional right to trial by jury. The concept of fair notice applies not just to criminal cases but also to civil penalties, such as removal. The U.S. Supreme Court has addressed the impermissible retroactive change in a civil penalty in *BMW vs. Gore*, 517 U.S. 559, 574, (1996). It stated:

> Elementary notice of fairness enshrined in this Court's constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose.

Because Mr. Rodriguez-Zapata had no notice of the civil penalty facing him at the time he plead guilty and because the penalty is much harsher than it was at the time of either his criminal conduct and/or the date of his conviction, the law is imposed in a retroactively impermissible fashion.

### 5. International Law and Treaty Obligations

As an additional or alternative basis for the granting of the Writ of Habeas Corpus, Petitioner Mr. Rodriguez-Zapata would show that the BIA decision violates international law and treaty obligations between the United States and Mexico, Mr. Polanco's birth place. *Universal Declaration of Human Rights* U.N. Doc.A/811, Part III Articles 13, 15 and 26 (1948).

### 6. BIA Decision Violates Due Process and Administrative Procedures

The BIA decision "affirms, without opinion, the results of the decision

below." (Exh. B). Thus, the decision stripping the Petitioner of heis long-held legal status consists of two lines. Such an opinion, without more, violates the due process and the administrative procedure rights of Mr. Rodriguez-Zapata. This procedure interferes with his right to a reasoned decision and it also fails to provide this Honorable Court with any basis for the BIA decision which this Court might review. This Honorable Court cannot determine whether the agency abided by its own regulations in rendering its decision, or on what basis it affirmed the Immigration Court decision. In addition, Mr. Rodriguez-Zapata would show that he raised new arguments with the BIA which were not argued before the Immigration Judge. Because of the nature and manner of the BIA Decision, Petitioner urges that this Honorable Court cannot evaluate the legality of the BIA review, of the decision of the court below as well as of the new arguments raised by the Petitioner on appeal. Because of the failure of the BIA to render a reviewable decision, the Writ should issue.

## V. PRAYER

Wherefore, the Petitioner pays that this Court grant the following:

1) Assume jurisdiction over this matter;

2) Stay any removal of Petitioner;

3) Declare the BIA decision void and unlawful and set it aside; and/or

4) Order that Petitioner's immigration case be remanded and that Petitioner be granted a 212(c) merits hearing; and/or

5) Order that Petitioner's legal permanent residency card be returned to him; and

6) Grant any other relief which this Court deems just and proper.

Respectfully Submitted,

_____
Paula S. Waddle, Attorney in Charge
South Texas Immigration Council
107 N. 3rd
Harlingen, TX 78550
(956) 425-6987
(956) 425-7434(fax)
State Bar No 26030400
Fed. I.D. No. 5674

IMMIGRATION COURT
201 E. JACKSON STREET
HARLINGEN, TX 78550

In the Matter of

RODRIGUEZ ZAPATA, ANTONIO            Case No.: A36-743-567

Respondent                           IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE

This is a summary of the oral decision entered on Sep 13, 2002.
This memorandum is solely for the convenience of the parties. If the
proceedings should be appealed or reopened, the oral decision will become
the official opinion in the case.

[X] The respondent was ordered removed from the United States to
    MEXICO or in the alternative to
[ ] Respondent's application for voluntary departure was denied and
    respondent was ordered removed to MEXICO or in the
    alternative to
[ ] Respondent's application for voluntary departure was granted until
    upon posting a bond in the amount of $ _____
    with an alternate order of removal to MEXICO.
[ ] Respondent's application for asylum was ( )granted ( )denied
    ( )withdrawn.
[ ] Respondent's application for withholding of removal was ( )granted
    ( )denied ( )withdrawn.
[ ] Respondent's application for cancellation of removal under section
    240A(a) was ( )granted ( )denied ( )withdrawn.
[ ] Respondent's application for cancellation of removal was ( )granted
    under section 240A(b)(1) ( )granted under section 240A(b)(2)
    ( )denied ( )withdrawn. If granted, it was ordered that
    respondent be issued all appropriate documents necessary to
    give effect to this order.
[ ] Respondent's application for _____ was ( )granted ( )denied
    ( )withdrawn ( )other.
[ ] Respondent's application for adjustment of status under section _____
    of the INA was ( )granted ( )denied ( )withdrawn. If granted, it
    was ordered that respondent be issued all appropriate documents necessary
    to give effect to this order.
[ ] Respondent's status was rescinded under section 246.
[ ] Respondent is admitted to the United States as a _____ until _____
[ ] As a condition of admission, respondent is to post a $ _____ bond.
[ ] Respondent knowingly filed a frivolous asylum application after proper
    notice.
[ ] Respondent was advised of the limitation on discretionary relief for
    failure to appear as ordered in the Immigration Judge's oral decision.
[ ] Proceedings were terminated.
[ ] Other: _____

Date: Sep 13, 2002
Appeal: Waived/Reserved    Appeal Due By Oct 15, 2002

by Respondent

ELEAZAR TOVAR
Immigration Judge

EXHIBIT
A

| | |
|---|---|
| **U.S. Department of Justice** | Decision of the Board of Immigration Appeals |
| Executive Office for Immigration Review | |
| Falls Church, Virginia 22041 | |

File: A36-743-567 - HARLINGEN                     Date: DEC 1 0 2003

In re: RODRIGUEZ ZAPATA, ANTONIO

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT: Waddle, Paula

ON BEHALF OF DHS: Lessa N. Whatmough, Assistant District Counsel

ORDER:

PER CURIAM. The Board affirms, without opinion, the results of the decision below. The decision below is, therefore, the final agency determination. *See* 8 C.F.R. § 1003.1(e)(4).

_____
FOR THE BOARD

EXHIBIT
B